**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-31313
(Summary Calendar)
_____

PATRICIA S. BRALY, M.D., wife of; DAVID R. POWERS, M.D.,

Plaintiffs-Appellants,

versus

MERVIN L. TRAIL, Etc.; ET AL.,

Defendants,

MERVIN L. TRAIL, M.D.; ROBERT L. MARIER, M.D.; HARVEY A. GABERT,
M.D.; KENNETH MCGRUDER, SR.; THE BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE,

Defendants-Appellees.

_____

PATRICIA S. BRALY, M.D., wife of; DAVID R. POWERS, M.D.,

Plaintiffs-Appellants,

versus

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL
AND MECHANICAL COLLEGE; ET AL.,

Defendants,

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AGRICULTURAL
AND MECHANICAL COLLEGE; ROBERT L. MARIER; HARVEY A. GABERT, M.D.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(98-CV-2219-B and 00-CV-998-B)
_____

May 18, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:


Plaintiffs-Appellants Patricia S. Braly, M.D., and David R. Powers, M.D., husband and wife (collectively, "Plaintiffs"), appeal the dismissal of claims they brought under Louisiana state law that were consolidated with their federal sex discrimination suit. Agreeing with the district court's decision to dismiss the case, we affirm.

I.

FACTS AND PROCEEDINGS

Patricia S. Braly, M.D., previously a professor at the Louisiana State University School of Medicine in New Orleans ("LSU"), and her physician husband bring a variety of claims against Dr. Braly's former employer. Most of them revolve around a tenure dispute. Dr. Braly was employed by LSU from February 1994, when she left her position as a tenured professor at the University of California in San Diego, until her resignation in

_____

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

2

April 2000, after she had filed this suit. In its letter offering employment to Dr. Braly, LSU promised her the position of "Tenured Professor and Director of Gynecologic/Oncology" at a guaranteed salary of $250,000 per year for at least three years, plus other consideration, including funds as needed for research, books, and meetings and eligibility for an annual bonus. Dr. Braly's 1994 Personnel Appointment Form reflects her status as "tenured."

In July 1995, Dr. Braly's status was changed retroactively from tenured to a two-year term with tenure appointment review.[1] In late 1996, she was told that her three-year probationary period was nearing an end, and she would have to be reviewed for appointment with tenure. In February 1997, Dr. Braly was given official notice that she would not receive tenure, along with an offer to continue to work for LSU for another year, until February 27, 1998. On January 15, 1998, she received another LSU letter, this one notifying her that the school had reconsidered its position and "determined that you are tenured, effective the date of your appointment to LSUMC School of Medicine." Her salary was reduced in 1997, however, and again from March 1 to June 30, 1998.

Drs. Braly and Powers filed suit in federal court in July 1998, claiming sex discrimination under 42 U.S.C. §§ 1983, 1985, and 2000(e), Title VII of the Civil Rights Act of 1964. Dr. Powers

---

[1] Dr. Braly was unaware of this change, but states in her deposition that she was told sometime in 1995 that she had arrived on two-year probation, after which tenure would be granted automatically.

3

alleged damages to his community property interests arising from LSU's acts against his wife. The Plaintiffs sought both monetary damages and injunctive relief.

In February 2000, the district court granted in part the Defendants' motion for partial summary judgment. The district court found, and the Plaintiffs conceded, that, under the Eleventh Amendment to the U.S. Constitution, members of LSU Board of Supervisors and the individual defendants in their official capacities enjoy absolute immunity from suit in federal court for monetary damages. All claims for money damages against them were therefore dismissed. Also dismissed were all claims arising under Title VII and 42 U.S.C. § 1985, and all claims arising under § 1983 for actions taken prior to July 27, 1997, as those claims had prescribed. All of Dr. Powers's claims were dismissed because, among other reasons, Louisiana recognizes no community property right in suits for employment discrimination or for defamation of a spouse's reputation. The sole surviving claims were those for monetary damages and injunctive relief against four of the individual defendants arising under § 1983 for actions taken after July 28, 1997, including but not limited to salary and tenure deprivation.

In May 2000, the district court partially denied without prejudice the Defendants' motion for summary judgment grounded in Dr. Braly's purported failure to allege a prima facie case of sex discrimination or other violations of her constitutional rights

4

under § 1983.  She opposed the motion under Fed. R. Civ. P. 56(f), claiming that the Defendants had denied her adequate discovery. The district court directed Dr. Braly to pursue appropriate means of enforcing any delinquent discovery matters within forty-five days; otherwise, the court could reconsider its denial of summary judgment.  The district court docket sheet reflects that the Plaintiffs did not file a motion to compel and took no other action until they filed an untimely memorandum in opposition to the Defendants' motion for summary judgment nearly four months later.

Meanwhile, in January 2000, the Plaintiffs filed a complaint in Louisiana state court re-urging their federal discrimination and defamation claims, as well as state law breach of contract and wage claims.[2]  The Defendants removed the state suit to federal court, and in August the cases were consolidated.  The court granted the Defendants' unopposed motion for summary judgment and entered final judgment dismissing all claims with prejudice.  The Plaintiffs timely perfected this appeal.

II.

ANALYSIS

The Plaintiffs state in their briefs that they have no

---

[2]  The Plaintiffs assert that this petition named only the LSU Board of Supervisors, not the individual defendants named in the federal suit.  Although the caption of the state petition indeed names only the board and its insurance company, two of the four individual defendants named in the federal suit are among the three individuals listed as parties in the text of the state petition.

objection to the dismissal of all claims in the federal court suit, and seek only remand to state court of their claims arising under Louisiana law. They have abandoned any claim of error as to the final judgment dismissing all of their federal claims with prejudice.[3] We therefore consider only the claims that the Plaintiffs have briefed, and consider them only with regard to state law causes of action.

A.   Standard of Review

This case is on appeal from a dismissal on summary judgment. Therefore, our review is de novo, applying the same standard as the district court.[4] A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[5] An issue is material if its resolution could affect the outcome of the action.[6] In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[7]

The standard for summary judgment mirrors that for judgment as

---

[3]   Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

[4]   Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[5]   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[6]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[7]   Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

a matter of law.[8] Thus, we must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[9] In reviewing all the evidence, we must disregard all evidence favorable to the moving party that the jury is not required to believe, and we give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[10]

B.    Failure to Respond to Motion for Summary Judgment

In their first assignment of error, the Plaintiffs complain that the district court dismissed their claims because they failed to respond to the Defendants' motion for summary judgment. It is true that we have disapproved the automatic grant of dispositive motions for failure to comply with local rules;[11] however, the district court did not grant summary judgment based solely on the Plaintiffs' failure to oppose it. The court specifically noted that it granted the motion because it "is deemed to be unopposed, and, further, it appear[s] to the Court that the motion has merit."

By the time the district court granted summary judgment, the case had been pending before it for more than two years. The court

---

[8]    Celotex, 477 U.S. at 323.

[9]    Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[10]    Id. at 150-51.

[11]    John v. State of La. (Bd. of Trs. for State Colls. & Univs.), 757 F.2d 698, 709 (5th Cir. 1985).

7

already had issued two detailed orders governing various motions and issues in the case, demonstrating an intimate familiarity with the Plaintiffs' claims and the facts of the case. Although a relatively short period of time elapsed between (1) the removal based on federal question jurisdiction and consolidation of the two cases (both steps unopposed by Appellants) and (2) the dismissal of all claims, the new state law claims raised in the second complaint are few in number and easily resolved. The Defendants' amended motion for summary judgment adequately demonstrated an absence of genuine issues of material fact regarding the new state law claims. We disagree with the Plaintiffs' contention that it is "obvious" that the district court "did not consider all of the issues raised in the State Court suit and the facts necessary to support those issues." We decline the Plaintiffs' invitation to discourse further on a party's burden to respond to opposed motions under Fed. R. Civ. P. 56. The first claim of error is denied.

C.    Genuine Issues of Material Fact

In their second assignment of error, the Plaintiffs urge us to reverse the summary judgment because they have raised genuine issues of material fact in their claims arising under Louisiana law. Perceiving none, we decline to do so.

In their second complaint, the Plaintiffs re-urged the federal claims that they had brought in their first complaint, now

8

abandoned.[12] They also alleged that the Defendants committed fraud; caused Dr. Braly to resign and otherwise failed to perform their contractual duties to her "in good faith," as required by La. Civ. Code Art. 1983; and failed to pay her wages and benefits, in violation of La. Rev. Stat. 23:631, et seq.

The Plaintiffs have failed, however, to raise any question as to whether Dr. Braly is owed back wages. Neither have they produced evidence of any employment contract damages.[13] LSU's offer letter to Dr. Braly clearly states that the Defendants promise her a salary of $250,000, guaranteed for three years, plus a $35,000 "starting salary boost" in the first year. The Defendants, in turn, produced undisputed payroll evidence showing that Dr. Braly was paid $335,000 in 1994-95, $277,500 in 1995-96, and $270,036 in 1996-97. The Plaintiffs have produced no evidence that Dr. Braly ever requested or applied for any of the other funds offered for books, dues, travel, or research, although some research support appears to have been provided to her. She also has failed to substantiate her claims that her travel was unfairly restricted by the departmental travel policy. In addition, Dr. Braly ultimately

---

[12] Curiously, although the Plaintiffs repeatedly insist in their briefs that they raised only state law claims in their second complaint, they also added a new free speech/retaliation claim apparently grounded in the First and Fourteenth Amendments to the U.S. Constitution. We also deem this claim abandoned, as the Plaintiffs seek reversal of summary judgment "as to the state law claims asserted in the state court case."

[13] See La. Civ. Code Ann. art. 1997 (West 2001).

had her tenure restored <u>ab</u> <u>initio</u> after undergoing LSU's grievance process, and she produced no evidence to support her claims that she lost other employment opportunities because of the tenure dispute.

## III.

### CONCLUSION

In sum, we are convinced on <u>de</u> <u>novo</u> review of the record that the Plaintiffs failed to produce any evidence supporting their state law claims. Therefore, we affirm the district court's summary judgment dismissing all state and federal claims.

AFFIRMED.